# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA SINGH,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | **Case No. 1:16-cv-1709-GSA**<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF SANDRA SINGH** |

## I. INTRODUCTION

Plaintiff, Sandra Singh ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs (Docs. 11, 12, and 13) which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] After reviewing the administrative record, the Court finds the decision is supported by substantial

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 5 and 6).

1

evidence. Accordingly, the Court denies Plaintiff's appeal.

## II. BACKGROUND AND PRIOR PROCEEDINGS

### A. Background

Plaintiff previously worked as a program technician for the County of Fresno for many years. AR 19; 36-37. She was was diagnosed with lymphedema of the left arm in 2008 following a partial mastectomy of the left breast, as well as restless leg syndrome and hypertension. AR 1717. On November 7, 2012, she filed an application for DIB alleging disability beginning October 18, 2012. AR 11; 150-157. The parties agree that Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 11, pg. 3 and Doc. 12, pg. 1-2). Therefore, this appeal is a review of Administrative Law Judge Cynthia Floyd's ("ALJ") decision issued on May 22, 2015, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 11-22.

### B. Summary of the Medical Record

The Court has reviewed the entire medical record. AR 216-1810. Because the parties are familiar with the factual background of this case, including Plaintiff's medical history, the Court will not exhaustively summarize these facts in this order. Relevant portions of the medical record related to Plaintiff's physical impairments and treatment raised in this appeal will be referenced in this decision where appropriate.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

### A. The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 11-20. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 18, 2012, the alleged onset. AR 13. The ALJ identified left arm lymphedema secondary to left breast mastectomy with frequent cellulitis as severe impairments. AR13. However, she determined that Plaintiff's history of hypertension, restless leg syndrome, osteopenia, and depression were nonsevere impairments. AR13-14. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 14.

Based on the review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with additional limitations. Specifically, she found that Plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight hour day; occasionally climb ladders, ropes, or scaffolds; frequently crawl; frequently hand and finger with her upper extremity; and occasionally

3

perform overhead reaching with her left upper extremity. AR 14-19. Based on this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a program technician and administrative assistant. AR 19.

**III.  ISSUES PRESENTED**

Plaintiff argues that the ALJ mischaracterized the medical opinion of Dr. Rustom Damania, M.D., who performed an internal medical evaluation. Specifically, she argues that the ALJ erred in her discussion of the limitations of Plaintiff's upper-left arm, which constitutes reversible error. She requests that the case be remanded for further proceedings. Defendant contends that athough the ALJ erroroneously summarized some of the doctor's findings, the error is harmless because the ALJ thoroughly discussed Plaintiff's upper-left extremity abilities and gave specific and legitimate reasons for rejecting the limitations that were inconsistent with the RFC.  The Commissioner therefore argues the ALJ's findings are supported by substantial evidence and reversal is not warranted.

**IV.  STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether:  (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

///

///

4

## V. DISCUSSION

### A. The ALJ's Errors Regarding Dr. Damania's Opinion are Harmless.

Plaintiff contends that the ALJ made two errors related to Dr. Damania's findings. First, Dr. Damania limited Plaintiff to *no* frequent reaching, pulling, and pushing with her left upper extremity. However, when discussing Dr. Damania's opinion, the ALJ improperly stated that Dr. Damania found Plaintiff "*could* frequently reach, push, or pull with the left upper extremity." Second, Plaintiff argues that although the ALJ gave Dr. Damania's opinion generous weight, she ignored the doctor's opinon that Plaintiff was only able to carry ten pounds occasionally and less than ten pounds frequently with the left extremity. Instead of incorporating these limitations into the RFC, the ALJ improperly found that Plaintiff could perform light work which requires that Plaintiff lift twenty pounds occassionally and ten pounds frequently with both extremities. Plaintiff argues the ALJ erred because she never provided specific and legitimate reasons for rejecting the lifting, reaching, pushing, and pulling limitations. Further, she contends that this error was not harmless because the vocational expert ("VE") testified that a person limited to lifting ten pounds occasionally and less than ten pounds frequently with the left arm with only occasional left arm extension, would preclude performance of Plaintiff's past relevant work. (Doc. 11, pgs. 6-11; Doc. 13, pgs. 3-5).

Defendant concedes that the ALJ committed error with regard to these two issues. However, the Commissioner argues that the errors are harmless because the ALJ specifically discussed why the left extremity limitations she imposed were supported by the medical record, as well as by the activities of daily living Plaintiff was able to perform. (Doc. 12, pgs. 4-7).

*1. The Law*

Under the law of this circuit, the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the

physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle,* 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected for specific and legitimate reasons. *Id.; Garrison v. CSS,* 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim v. CSS,* 763 F. 3d 1155, 1161 (9th Cir. 2014). The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas,* 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester,* 81 F.3d at 831, *citing Magallanes v. Bowen,* 881 F.2d 747, 751–755 (9th Cir. 1989).

   *2. Analysis*

Here, the ALJ discussed three doctors opinions: Dr. Rustom F. Damania, M.D., a physician who performed a consultative exam; and Drs. J. Fahlberg and A. Nasrabadi, two non-examing state agency physicians. Dr. Rustom F. Damania, M.D., conducted a consultative examination on May 2, 2013. AR 1715-1720. Dr. Damania reported that Plaintiff is left handed. AR 1717. Dr. Damania observed grip strength of 40-40-35 for the right arm, and 20-20-20 for the left upper extremities. AR 1717. The doctor reported that Plaintiff's left arm was wrapped in a Velcro brace and was about three quarters of an inch larger than the right. AR 1718.

Dr. Damania noted that Plaintiff suffered from lymphedema of the left arm since October 2008, following partial mastectomy of the left breast for breast cancer, restless leg syndrome, hypertension, and weak knees. AR 1719. He also opined that Plaintiff retained the residual functional capacity to: lift and carry twenty pounds occasionally and ten pounds frequently on the right; on the left, she could lift ten pounds occasionally and less than ten pounds frequently; she could stand, walk, and sit without restriction; had no postural or manipulative limitations on the right side, but on the left side, Plaintiff was limited to no frequent reaching, pulling or pushing.

6

AR 1719-1720.

Dr. J. Fahlberg, M.D., a state agency physician, reviewed the file on May 30, 2013. AR 73-75. Dr. Fahlberg opined that Plaintiff possessed the residual functional capacity to lift twenty-five pounds occasionally and twenty pounds frequently; stand, walk or sit for a total of six hours in an eight-hour workday; and occasionally reach overhead with the left arm. AR 74-75. State agency physician, Dr. A. Nasrabadi, M.D., reviewed the file on September 20, 2013, and opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for a total of six hours in an eight-hour workday; and could occasionally reach overhead with the left arm. AR 85-87.

As previously noted, both parties agree that the ALJ made the following two errors regarding Dr. Damania's opinions : (1) when discussing Dr. Damania's opinion, the ALJ improperly stated that the doctor found Plaintiff "could frequently reach, push, or pull with the left upper extremity, " when Dr. Damania actually found that Plaintiff was limited to *no* frequent reaching, pushing, or pulling with the left upper extremity, and (2) although the ALJ gave Dr. Damania's opinion generous weight, she did not incorporate Dr. Damania's limitation into the FRC that Plaintiff was only able to carry ten pounds occasionally and less than ten pounds frequently with the left extremity. Instead, the ALJ improperly found that Plaintiff could perform light work which requires that Plaintiff lift twenty pounds occasionally and ten pounds frequently with both extremities.

At issue in this appeal is whether the above errors were harmless. After reviewing the decision in its totality, the Court finds that the errors are indeed harmless. With regard to the first error, the ALJ limited Plaintiff to *occasional* reaching, pushing, and pulling with the upper left extremity. This is consistent with Dr. Damania's limitation that Plaintiff was restricted to *no frequent* reaching, pulling, or pushing. AR 1719. "Occasionally" means from very little to one-third of the time. "Frequent" means occurring from one-third to two-thirds of the itme. SSR 83-10. Thus, the ALJ's limitation restricting Plaintiff to *occasional* reaching, pushing and pulling is consistent with the *no frequent* limitation regarding these activities.

The ALJ's second error is similarly harmless. The ALJ indicated that she was giving all of

7

the state agency doctors' opinions generous weight. The ALJ clarified this by noting that these consultants found that Plaintiff could do "a light *range* of work with left-upper reaching limitations." AR 17. Although the ALJ did not discuss the reasons for rejecting Dr. Damanian's lifting/carrying limitations specifically, she did discuss Plaintiff's upper-left extremities throughout the decision and referenced the medical record, Plaintiff's treatment history, and her wide range of activities of daily living, to support the RFC. AR 17-19.

Specfically, the ALJ noted that Plaintiff described aggravation of the left arm, but admitted that medication and heat decreases the pain level. AR 17. She also noted that although Plaintiff must wear a left arm sleeve and glove, and use a compression machine twice a day for eight days a month, there were no other treatments for Plaintiff's lymphedema. AR 18. Similarly, treatment records only showed occasional edema with no other objective findings for this condition since the alleged onset date. The ALJ also noted there was no joint pain, tenderness, swelling or redness; normal range of motion; no focal weakness or numbness; no sensory problems, and no visible deformity. AR 18; 1699; 1718-1719; 1789; 1803. Moreover, the ALJ found that Plaintiff's cellulitis has been described as low grade, treated with penicillin prophylacatically, and did not require hospitalization since her alleged onset date. AR 1703; 1729-1731. Indeed, the ALJ explained that Plaintiff was able to manage her symptoms with conservative treatment consisting primarily of left-arm compression modalities, physical therapy, and a Pen VK4 (an antibiotic treatment), and that the Pen VK4 worked quite well. AR 15, 17–18; 54; 568; 576; 705; 707; 1703. Finally, the ALJ noted that Dr. Damania indicated that Plaintiff's grip strength was reduced to twenty pounds on the left side, which is consistent with a light residual functional capacity of light work. AR 18; 1717-1718. Given the above, the ALJ made specific medical findings that supported her RFC finding limiting Plaintiff to light work with an overhead reaching limitation in her left hand.

In support of the RFC, the ALJ also found that Plaintiff's statements that she is only able to lift ten pounds was not credible. AR 18. This finding is supported by the record. Specifically, the ALJ relied on Plaintiff's ability to perform a wide range of daily activities despite her allegations of disabling pain. These activities included taking care of five dogs, taking daily

8

walks, completing housework - including doing laundry, vacuuming, dusting, cooking, and driving, which all require good use of her upper and lower extremities. AR 18-19; 32; 34-35. The ALJ appropriately concluded that Plantiff's activities of daily living further demonstrated that Plaintiff was capable of performing the work outlined in the RFC. *Morgan v. CSS*, 169 F. 3d 595, 600-602 (9th Cir. 1999) (conflict between a medical opinion and daily activities may justify rejecting an examining provider's opinion).

Finally, the ALJ also relied on medical opinions from Dr. Fahlberg and Dr. Nasrabadi. AR 17, 74-75, 86-87. Dr. Fahlberg opined that Plaintiff had the RFC to lift and/or carry twenty pounds frequently and twenty-five pounds occasionally, stand and/or walk for a total of six hours in an eight-hour day, and occasionally reach overhead with the left arm. AR 17; 74-75. Similarly, Dr. Nasrabadi opined that Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally, stand and/or walk for a total of six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and occasionally reach overhead with the left arm. AR 17; 86–87. Although the ALJ did not specifically discount Dr. Damania's lifting/carrying limitation, the ALJ did credit these other opinions who both opined that Plaintiff had greater upper left arm capabilities than the more limited opinion given by Dr. Damania. These opinions constitute substantial evidence because they are consistent with other evidence in the record, including treatment notes in the file and Plaintiff's testimony regarding her activities of daily living. *Thomas*, 278 F.3d at 957; *Lester*, 81 F.3d at 831, citing *Magallanes*, 881 F.2d at 751-755 (The opinion of a non-examining physician may constitute substantial evidence when it is consistent with independent clinical findings or other evidence in the record including laboratory test results, or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion.)

Given all of the above, the Court finds that the ALJ's errors in this decision were harmless. An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r of Social Security*, 533 F.3d at 1162; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (same); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006) (same); *Stout v. Comm'r of Social Security*, 454 F.3d 1050, 1055 (9th Cir. 2006)

(same). Here, although the ALJ's decision contained some errors, her assessment of the medical record and the basis for the RFC are supported by substantial evidence.

**VI.     CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Accordingly, this Court ORDERS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Actng Commissioner of Social Security, and against Plaintiff, Sandra G. Singh, and close this case.

IT IS SO ORDERED.

Dated:   **February 20, 2018**                      **/s/ Gary S. Austin**
                                                                 UNITED STATES MAGISTRATE JUDGE